IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LATECIA P. HILL, §<br>　　#54421-177, §<br>　　　　MOVANT, §<br>　　　　　　 §<br>V. §<br>　　　　　　 §<br>UNITED STATES OF AMERICA, §<br>　　　　RESPONDENT. § | CASE NO. 3:19-CV-1602-L-BK<br>(CRIMINAL NO. 3:16-CR-266-L-2) |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Movant Latecia Hill's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate. As detailed here, the motion should be **DENIED**.

**I. BACKGROUND**

In 2017, Hill pled guilty to conspiracy to commit health care fraud and, in 2018, was sentenced below the guideline range to 36 months' imprisonment and a three-year term of supervised release. Crim. Doc. 148.[1] She was also ordered to pay restitution of $2,000,020.89. Hill did not filed a direct appeal, but on July 2, 2019, she timely filed this Section 2255 motion alleging ineffective assistance of counsel at sentencing and challenging counsel's strategy. Doc. 3. The Government has filed a response opposing Section 2255 relief. Doc. 16. Hill has filed a

---

[1] All "Crim. Doc." citations refer to the related criminal case: *United States v. Hill*, No. 3:16-CR-266-L-2 (N.D. Tex. July 11, 2018).

reply. Doc. 17. Upon review, the Court finds that Hill has not demonstrated counsel was ineffective. Thus, her Section 2255 motion fails on the merits.

## II. ANALYSIS

To succeed on a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697. To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id*. at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Thus, "[i]f a tactical decision is 'conscious and informed ... [it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008) (citing *Crane v. Johnson,* 178 F.3d 309, 314 (5th Cir. 1999)). Consequently, a "mere disagreement about tactics does not amount to a constitutional infirmity." *United States v. Allen*, 918 F.3d 457, 461 (5th Cir. 2019) (citing *Strickland*, 466 U.S. at 690).

Moreover, to prove prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the sentencing context, the movant must

demonstrate that the sentence was increased by the deficient performance of defense counsel. *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001).

### A. Counsel's sentencing strategy was reasonable

In her first ground, Hill challenges her counsel's strategy for attacking the loss amount used to increase her base offense level under the guidelines. *See* U.S.S.G. § 2B1.1(b)(1); Crim. Doc. 106-1 at 13. She asserts counsel should have introduced evidence of Hill's "actual, subjective understanding" that Medicare customarily reimburses only 60 to 70 percent of the total amount billed. Doc. 3 at 9, 18-20; Doc. 17 at 6. Hill avers that Medicare reimbursement practices are "probative of a defendant's intended loss in … Medicare fraud cases." Doc. 3 at 19. She thus maintains that counsel's strategy at sentencing was objectively unreasonable. Doc. 17 at 5. However, as the Government correctly argues, counsel's tactical decision was reasonable under the facts of this case and, as such, did not fall outside the "wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689 (internal citations and quotations marks omitted).

In the objections to the PSR and throughout the sentencing hearing, defense counsel repeatedly emphasized Hill's minimal role in the conspiracy and lack of involvement in the billing process.[2] Counsel's strategy apparently was twofold: (1) establish that the loss amount was not reasonably foreseeable to Hill based on her limited role in the offense, in order to decrease the 18 levels applied in the PSR, *and* (2) downplay Hill's overall role in the conspiracy to secure a below-guideline sentence based on the sentencing factors. Crim. Doc. 114 at 2-3; Crim. Doc. 188 at 5-12, 27-35. Counsel informed the Court that she did not "believe Ms. Hill

---

[2]The court reporter filed the sentencing transcript long after the filing of the Government's response and Hill's reply. Crim. Doc. 188. Hill also encloses a copy of the sentencing transcript with her Section 2255 motion. Doc. 3 at 32.

was involved with the billing at all ever" and, consequently, that was "the basis for [the] argument that the loss amount … is better reflected by the actual loss," not the intended loss, which would "result in a two-level decrease in the offense level." Crim. Doc. 188 at 7. According to counsel, "the only people involved in the billings [were] Harlan Hill [Hill's husband and co-defendant] and the billers referenced in … the PSR." Crim. Doc. 188 at 6. Counsel explained that "Harlan Hill was solely responsible for upcharging … to those different codes for comprehensive ear exams … and … directing others involved with the billing to do that." Crim. Doc. 188 at 6-7.

When the Court invited arguments on the sentencing factors, counsel zealously expounded that Hill was brought on board by her husband, co-defendant Harlan Hill, because of her organizational and administrative skills some four years after the business plan had been established, and that, for one and a half years, she essentially managed the "document flow" but did not otherwise "question the way things were being done." Crim. Doc. 188 at 28-29. Counsel emphasized Hill's limited role as an administrator who "didn't question the way things were being done"—essentially "a manager of document flow" tasked to "make things run more efficiently." Crim. Doc. 188 at 28.

In her closing argument, counsel once more highlighted Hill's limited involvement as an administrator and compared it to that of a "cheerleader for the troops" to "get them to do paperwork and … everything consistently." Crim. Doc. 188 at 41. During her allocution, Hill supported counsel's tactic by stating that her work at TSEC "was not my primary job" and "I was there on a sporadic basis." Crim. Doc. 188 at 42. Hill also admitted that "billing [was] far outside of my scope of area of expertise" and so "I didn't know to question [the billing practices]." Crim. Doc. 188 at 42.

Ultimately, the Court overruled defense counsel's objections to the loss amount, concluding that the intended loss was reasonably foreseeable to Hill based on "the way [TSEC's employees] were billing" and "who was being billed." Crim. Doc. 188 at 12 (explaining that "[Hill] would have to … [be] blind and deaf to walk around without knowing what was going on with respect to billing."). However, the Court granted a variance of ten months below the guideline range and sentenced Hill to 36 months based, at least in part, on the short-term nature of Hill's involvement. Doc. 3 at 75-82.

Because counsel was unsuccessful in challenging the loss amount, Hill now argues that counsel should have opted to emphasize her knowledge of the business and Medicare reimbursement practices—not her short and limited involvement and overarching ignorance of billing—and required that she testify about her familiarity with Medicare billing standards. Doc. 3 at 92 ¶ 13 (affirming in her affidavit, "I was never involved in billing directly, I did not know anything regarding the particular billing codes used by TSEC" but "[I] underst[ood] that Medicare reimbursed TSEC at a rate of no more than 70 percent" based on "my work related to TSEC's accounting and budget and my familiarity with Explanations of Benefits issued from Medicare to TSEC").

Hill's arguments amount to nothing more than a "Monday-morning" disagreement about strategy, and does not rise to the level of a constitutional violation. Allen, 918 F.3d 457, 461. As noted previously, counsel's strategy to focus on Hill's short and limited involvement consisted of two parts—challenge the loss amount as not reasonably foreseeable but also secure a sentence below the guideline range. On this record, counsel's sentencing strategy was sound and reasonable and therefore did not fall outside the "wide range of reasonable professional assistance." See Strickland, 466 U.S. at 689 (internal citations and quotations marks omitted).

Because Hill has not overcome the presumption that defense counsel's sentencing strategy was sound under the facts of this case, *Id.*, she has failed to establish deficient performance, and her first claim fails.

### B. Counsel's failure to investigate triple-counting claim is unsupported and conclusory

Next, Hill asserts that, in assessing her loss amount, the PSR triple-counted one batch of invoices.  Doc. 3 at 21.  Relying on co-defendant Harlan Hill's uncorroborated statements to her that Medicare was billed three separate times on a particular batch, Hill contends that counsel "apparently made no effort to investigate" or present "evidence of these re-bills."  Doc. 3 at 21; Doc. 3 at 93, ¶ 19 (claiming counsel did not endeavor "to confirm [or] deny this information").  Hill's allegations are conclusory and unsupported, however.  *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value.").

Indeed, Hill offers nothing beyond her sweeping statements that defense counsel failed to investigate.  *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.").  In alleging that counsel failed to investigate, Hill must demonstrate with specificity both what the investigation would have revealed and how it would have benefitted her.  *See United States v. Curtis*, 769 F.3d 271, 276-78. (5th Cir. 2014) (per curiam).  Hill has failed to do so.  As such, her second claim of ineffective assistance of counsel likewise fails.

### C. Counsel's failure to interview or subpoena witnesses also lacks merit

Lastly, Hill contends counsel failed to "develop" and "offer evidence" that a few of TSEC's services—ear lavages and actual hearing tests—were legitimate and, thus, would have

justified "an offset" for "legitimate services." Doc. 3 at 22. She asserts counsel should have "interview[ed] or subpoena[ed]" any of TSEC's employees, contractors, the "thousands of patients," and "dozens of skilled nursing facility" administrators to ascertain the services provided and their fair market value. Doc. 3 at 22-23.

Hill's assertions are again conclusory and, therefore, insufficient to sustain an ineffective-assistance claim. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (requiring movant to "allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"). Hill has not identified any potential witnesses, indicated that they were available and would have testified at sentencing, or shown that their proposed testimony would have been favorable. *See Curtis*, 769 F.3d at 276 ("A defendant must rely on more than bare allegations about counsel's failure to interview or produce a witness and must show that the witness's testimony, if offered, would have been exculpatory."); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (requiring petitioner to name the witness, demonstrate the witness's availability and willingness to testify, identify the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense to satisfy *Strickland* prejudice prong). Therefore, this claim also lacks merit.

### III. CONCLUSION

Hill's Section 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on February 5, 2021.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).